**EX PARTE Kenneth BROUSSARD,
Applicant**

**NO. WR–83,014–01**

Court of Criminal Appeals of Texas.

DELIVERED: April 12, 2017

Concurring Opinion on Denial of Rehearing June 7, 2017

·Inger Chandler, for the State of Texas.

Nicolas Hughes, for Kenneth Broussard.

## OPINION

Keasler, J., delivered the opinion of the Court in which Keller, P.J., and Hervey, Richardson, Yeary, and Keel, JJ., joined.

Kenneth Broussard pleaded guilty to delivery of cocaine and was sentenced to eight months' imprisonment. Laboratory tests later determined that Broussard possessed methamphetamine. In his habeas corpus application, Broussard alleges that his plea was involuntary, and as a result, violated due process because the test results show he did not possess cocaine. Because at the time of the plea Broussard had sufficient awareness of the law in relation to the facts, we hold that his plea was voluntary and intelligent.

### I.

On December 10, 2014, Broussard was arrested with less than one gram of an unidentified substance. A field test determined that the substance was cocaine—a penalty group one substance.[1] Broussard was charged with delivery of cocaine in an amount less than one gram. The charging document also included two enhancement paragraphs. On December 12, 2014, Broussard entered into a plea-bargain agreement. He pleaded guilty and, under § 481.112 (b) of the Controlled Substances Act, was sentenced to eight months in state jail. As part of the agreement, the State abandoned both enhancement paragraphs.

On February 9, 2015, the Houston Forensic Science Center released a laboratory report identifying the substance as methamphetamine—also a penalty group one substance [2]—in an amount of less than one gram. Broussard filed this habeas corpus application alleging that his plea was involuntary and his conviction violated due process because the lab results show he did not possess cocaine. The Harris County District Attorney's Office and habeas judge both recommended that we grant Broussard relief. However, these recommendations do not automatically entitle an applicant to relief, especially if the legal theory underlying these recommendations is uncertain.[3] We filed and set Broussard's application to evaluate the judge's conclusion that his plea was involuntary. ·

### II.

A guilty plea must be entered knowingly and voluntarily.[4] A defendant must have an understanding of the law in relation to the facts surrounding his plea.[5] Further, a defendant must have sufficient awareness of the relevant circumstances surrounding the plea.[6] A guilty plea is valid only if it is "a voluntary and intelligent choice among the alternative courses of action open to the defendant." [7]

---

1. Tex. Health & Safety Code § 481.102(3)(D).

2. *Id.* § 481.102(6).

3. *See Ex parte Marez*, 464 S.W.2d 866, 868 (Tex. Crim. App. 1971).

4. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

5. *Id.*

6. *McMann v. Richardson*, 397 U.S. 759, 766, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

7. *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013).

 Sufficient awareness of the factual circumstances surrounding a plea, as opposed to complete knowledge, is required when a plea is entered. In *United States v. Ruiz*, the United States Supreme Court held that the prosecution was not required to disclose impeachment evidence before entering into a plea agreement.[8] Although giving more information to a defendant will likely result in a wiser plea, "the Constitution does not require the prosecutor to share all useful information with the defendant."[9] A court is permitted to accept a plea where a defendant does not have complete knowledge of the State's case, so long as he has a sufficient factual awareness.[10] While *Ruiz*'s reasoning is instructive, that case addressed mandatory disclosure of impeachment evidence before a plea. Broussard does not claim that the laboratory results were impeachment evidence. Accordingly, our analysis focuses on *Brady v. United States*[11] and *Ex parte Palmberg*[12]—cases conspicuously absent from the dissenting opinion.

 A defendant may have a sufficient factual awareness despite laboring under misapprehensions.[13] In *Brady v. United States*, the Supreme Court held that a defendant's plea was not rendered involuntary because it was induced by his attorney's miscalculation of the penalties available if he pleaded guilty or went to trial.[14] "A defendant is not entitled to withdraw his plea merely because he dis-covers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."[15] However, a guilty plea induced by the State's misrepresentation or improper promises by the State is involuntary and may be withdrawn.[16]

 When a defendant pleads guilty knowing that a particular fact is unknown or at least uncertain, he cannot later invalidate his plea if he misapprehended that fact or the State's ability to prove it. In *Ex parte Palmberg*, we held that "even if the defendant is less-well informed, as long as he has sufficient awareness of his circumstances—including an awareness that some facts simply remain unknown to him or are undetermined as of the time of his plea—his potentially unwise plea is still a voluntary one."[17] Palmberg, like Broussard, pleaded guilty after a field test determined he was carrying an illicit substance.[18] Several years later, the police department attempted to analyze the substance but learned that the entire sample was consumed in the field test.[19] Palmberg filed a habeas corpus application alleging that his plea was involuntary because he believed, at the time of the plea, that the State would be able to prove the substance was illicit at trial.[20] Following the Supreme Court's precedent in *Brady* and *Ruiz*, we held that Palmberg was not entitled to

---

8. *United States v. Ruiz*, 536 U.S. 622, 625, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002).

9. *Id.* at 629.

10. *Id.* at 630.

11. 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

12. 491 S.W.3d 804 (Tex. Crim. App. 2016).

13. *Brady*, 397 U.S. at 757, 90 S.Ct. 1463.

14. *Id.* at 756.

15. *Id.* at 757.

16. *Id.* at 755.

17. *Ex parte Palmberg*, 491 S.W.3d at 809.

18. *Id.* at 806.

19. *Id.*

20. *Id.* at 806–07.

withdraw his plea because he misapprehended the strength of the State's case.[21]

■ In *Palmberg*, we reiterated that a defendant need not have complete knowledge of the State's case to make a voluntary and knowing guilty plea.[22] The correct standard is "whether [the defendant] was aware of sufficient facts—including an awareness that there are or may be facts that he does not *yet* know—to make an informed and voluntary plea."[23] If a known fact changes after the plea—for example, a key witness dies—the defendant is not entitled to withdraw his plea.[24] In the same way, if a known unknown is discovered to be different than the defendant estimated, it does not necessarily entitle him to relief from his agreement with the State because his estimation turned out to be wrong.[25]

### III.

■ Broussard argues that because he did not have sufficient awareness of the factual circumstances surrounding his plea, it was involuntary and unknowing. According to Broussard, he lacked a sufficient factual awareness because he was not aware of the laboratory results before he pleaded guilty. Broussard claims he would not have pleaded guilty "but for the incorrect belief that the evidence supported this conviction." He does not claim his plea was involuntary by virtue of its impeachment value. The dissent would find a plea "under identical facts" voluntary because the defendant "received a good plea deal[,]"

but curiously would grant Broussard relief based on his bare assertion that he would not have accepted the plea.[26] The dissent would further require a court to "assess[ ] the importance of the type of substance on a defendant's decision to plead guilty"[27] instead of requiring a defendant to meet his burden by providing a reason why he would not have accepted the plea. But Broussard articulates no reason why he would not have accepted the plea bargain other than the bare fact that the illicit substances were different. Supreme Court precedent adopted by this Court mandates that Broussard's argument fail and his writ be denied.

■ "Every defendant that pleads guilty does so with the implicit understanding that conviction at trial is never certain."[28] A guilty plea provides not only certainty but also other benefits in the form of a reduced sentence or a dropped charge or enhancement.[29] The cost of a guilty plea's certainty is the waivers of rights, including the right to confront and cross-examine witnesses and the right to have the State prove the charges beyond a reasonable doubt.[30] The Supreme Court aptly described a defendant's decision-making process:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.

---

21. *Id.* at 809.

22. *Id.*

23. *Id.* (emphasis in original).

24. *Id.*

25. *Id.*

26. *Ante*, at 823, n.1 (Alcala, J., dissenting).

27. *Id.*

28. *Id.* at 809 n.9.

29. *Id.* at 810 n.10.

30. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in light of later events seem improvident, although they were perfectly sensible at the time.[31]

When considering whether to accept a plea agreement with its attendant waivers of rights, defendants generally weigh the certainty and benefits associated with pleading guilty against the risk involved at trial.

Here, Broussard pleaded guilty without knowing all of the pertinent facts. He was faced with the risk of trial and, because the enhancement paragraphs would enhance his state-jail felony to a third-degree felony, a maximum penalty of ten years' imprisonment.[32] In the plea-bargain agreement, the State offered Broussard eight months' imprisonment and agreed to abandon both enhancement paragraphs. Broussard chose to take the benefits of pleading guilty and avoid the risk of trial. Broussard is not entitled to withdraw his plea simply because his good-faith evaluations of the facts turned out to be incorrect.

As we held in *Palmberg*, a defendant who pleads guilty knowing that a certain fact is unknown cannot invalidate his plea because he misapprehended that fact.[33] Here, Broussard pleaded guilty before laboratory tests confirmed that the unidentified substance was cocaine. Broussard chose to avoid the risks involved at trial and pleaded guilty, gaining the certainty and benefits associated with the plea. He cannot now invalidate his guilty plea be-cause his prediction of the State's ability to prove he possessed cocaine was incorrect.[34] This conclusion is consistent not only with *Palmberg* but also with *Brady* where the Supreme Court found that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case[.]"[35]

Invalidating a plea such as Broussard's would render the waivers, admonishments, and stipulations that a defendant has sworn to—the equivalent of testimony—inconsequential. In *Brady*, the Supreme Court found "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought."[36] Broussard judicially confessed and swore that he was competent and aware of the consequences of his guilty plea. Within the same judicial confession, he waived his right to a jury and his right to require the appearance, confrontation, and cross-examination of witnesses. Finally, in Broussard's sworn judicial confession he stipulated that "[he had] read the indictment and [he] committed each and every element alleged." Invalidating Broussard's guilty plea based on later-obtained evidence, which was known to be unknown at the time of the plea, would contradict *Brady* and trivialize the importance and

---

31. *Brady*, 397 U.S. at 756–57, 90 S.Ct. 1463.

32. Tex. Penal Code §§ 12.425(a), 12.34(a).

33. *Ex parte Palmberg*, 491 S.W.3d at 809.

34. *See id.* at 810 n.13 ("Allowing such a defendant to undo his plea because the State's evidence turned out to be insufficient would be similar to a poker player wanting to undo his fold upon realizing that his opponent did not have a winning hand.").

35. *Brady*, 397 U.S. at 757, 90 S.Ct. 1463.

36. *Brady*, 397 U.S. at 757, 90 S.Ct. 1463.

solemnity of sworn statements, judicial confessions, and testimony generally.

Broussard attempts to support his argument by relying on *Ex parte Mable*, but *Mable* does not support a claim like Broussard's. In *Ex parte Mable*, we extended the involuntary-plea jurisprudence to allow a defendant who was later found to have no illicit substances to withdraw his plea.[37] We held that Mable's guilty plea to possession of a controlled substance was involuntary because, in fact, he was not carrying any illicit substances.[38] It was the complete lack of illicit substances that qualified as a "crucial" fact in *Mable*'s involuntary-plea calculus.[39] Here, because the laboratory tests confirmed that Broussard was carrying an illicit substance listed in penalty group 1, Broussard is not entitled to the relief *Mable* affords those applicants whose cases fall within the specific circumstances presented in *Mable* itself.

## IV.

A guilty plea is not necessarily involuntary when a defendant misapprehends a known unknown. As such, guilty pleas that are otherwise valid do not become invalid merely because laboratory tests determine the defendant was carrying a different illicit substance. For this reason, we deny Broussard's writ of habeas corpus.

Alcala, J., filed a dissenting opinion. Walker, J., concurred. Newell, J., dissented.

Alcala, J., filed a dissenting opinion.

I respectfully disagree with this Court's majority opinion that denies post-conviction habeas relief to Kenneth Broussard, applicant. Although I agree with the majority opinion that there are some good reasons to deny applicant relief under these circumstances, I am ultimately more persuaded that, in this close case, the more prudent course is to follow the habeas court's recommendation to grant relief to applicant on the basis that, under the circumstances of this case, his plea was unknowingly and involuntarily made. I, therefore, respectfully dissent.

## I. Background

Applicant was charged with two cases, one for delivery of a controlled substance, namely cocaine, and one for possession of a controlled substance, namely methamphetamine. He entered into a plea bargain for state-jail time on the cocaine delivery case in exchange for the State's dismissal of the methamphetamine case. His judgment for the delivery case shows that the offense for which he was convicted was "delivery of cocaine weighing less than one gram." After he was convicted, the State received a laboratory report that it supplied to him showing that the substance he had delivered did not contain any cocaine and it instead was comprised totally of methamphetamine.

Applicant filed an application for a writ of habeas corpus. In pertinent part, he claimed that he was not aware of the "relevant circumstances" surrounding his plea of guilty and that he would not have pleaded guilty had he known about the negative cocaine results. The State agreed with applicant that he should obtain relief from his conviction and be permitted to withdraw his guilty plea. In joining applicant's request for relief, the State agrees that he has never been guilty of possessing cocaine. The habeas court recommended that this Court grant relief to applicant on the

---

37. *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

38. *Id.*

39. *Id.*

basis that his plea was involuntary and that it violated due process because he did not know that the substance he possessed did not contain cocaine, and thus there was no evidentiary support for the offense for which applicant had been convicted.

## II. Analysis

This case turns on whether the absence of cocaine as indicated in the laboratory report should be narrowly considered as impeachment evidence, in which case habeas relief should be denied, or whether it should be more broadly considered as evidence undermining the existence of the offense for which applicant was convicted, in which case relief should be granted. I explain my rationale in favor of granting relief by more closely examining *United States v. Ruiz*, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), and *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).

In *Ruiz*, the Supreme Court held that the federal Constitution does not require "preguilty plea disclosure of impeachment information," which in that case was "impeachment information relating to informants or other witnesses," and the Court held that Ruiz's plea was not involuntary based on the lack of that disclosure prior to her plea to the offense. *Ruiz*, 536 U.S. at 625, 628–29, 122 S.Ct. 2450. The Court discussed three reasons for reaching that conclusion. First, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary.*" *Id.* at 629, 122 S.Ct. 2450. The Court explained that the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it. *Id.*

Second, "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.* at 630, 122 S.Ct. 2450. The Court explained that it is difficult to distinguish, in terms of importance, (1) a defendant's ignorance of grounds for impeachment of potential witnesses at a possible future trial from (2) the varying forms of ignorance at issue in these cases. *Id.*

Third, due process considerations did not weigh in favor of pre-plea disclosure. *Id.* at 631, 122 S.Ct. 2450. The Court discussed due process considerations including (1) the nature of the private interest at stake, (2) the value of the additional safeguard, and (3) the adverse impact of the requirement upon the Government's interests. *Id.* The Court explained that the issue in that case was impeachment evidence and that the government had agreed to otherwise reveal " 'any information establishing the factual innocence of the defendant' regardless." *Id.* This distinction between mere impeachment evidence and factual innocence was important to the Court. *See id.* It indicated that the fact that the government agreed to reveal pre-plea information establishing the factual innocence of the defendant "diminishes the force of Ruiz's concern that, in the absence of impeachment information, innocent individuals, accused of crimes, will plead guilty." *Id.* Furthermore, the Court considered the State's interest in the premature disclosure of witness information that could disrupt ongoing investigations and expose prospective witnesses to serious harm. *Id.* at 631–32, 122 S.Ct. 2450. The Court weighed the "comparatively small [ ]

constitutional benefit" of revealing mere impeachment evidence that did not implicate factual innocence of a defendant against the harm that might occur from forcing the government to abandon its general practice of not disclosing to a defendant pleading guilty information that would reveal the identities of cooperating informants, undercover investigators, or other prospective witnesses and any possible decrease in the number of cases routinely resolved through the plea bargaining process. *Id.* The Court concluded by stating, "These considerations, taken together, lead us to conclude that the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633, 122 S.Ct. 2450.

As I show in discussing each of the Supreme Court's three reasons for its conclusion in *Ruiz*, the rationale for denying relief to Ruiz does not squarely apply to the facts in this case. *See id.* First, although it is true that impeachment information is special in relation to the fairness of a trial, rather than with respect to whether a plea is voluntary, that begs the question whether the type of evidence at issue in this case should be properly considered impeachment evidence. This is a closer call than it may initially appear. On the one hand, applicant did deliver a controlled substance, and thus he was factually guilty of delivery of a controlled substance, and one could *rationally* argue that the type of controlled substance that he possessed should be considered mere impeachment evidence. On the other hand, applicant did not possess any controlled substance of the kind that he was convicted of possessing. Thus, applicant was factually innocent of delivery of cocaine, the offense he had been charged with and convicted for in the judgment.

In *Mable*, this Court granted habeas relief to Mable, who had pleaded guilty to possession of a controlled substance, but laboratory testing conducted after the plea revealed that the substance he was arrested for possessing did not actually contain any illicit materials. *See Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). This Court granted habeas relief, explaining that all the parties involved "incorrectly believed [that Mable] had been in possession of drugs. This fact is crucial to this case, and while operating under such a misunderstanding, [Mable] cannot be said to have entered his plea knowingly and intelligently." *Id.* Here, similar to *Mable*, applicant pleaded guilty to delivery of a controlled substance, cocaine, but the laboratory testing conducted after the plea revealed that the substance that he was arrested for delivering did not actually contain any cocaine. *See id.* The instant case is unlike *Mable*, however, because Mable did not possess any illicit materials of any kind, but here applicant did possess an illicit material, methamphetamine. *See id.* I conclude that this difference between *Mable* and the instant case may or may not result in an unknowing and involuntary plea depending on the circumstances of the plea. Because cocaine and methamphetamine are in the same penalty group, it would appear that, in some cases, the facts may demonstrate that it is immaterial to a defendant's plea to delivery of a controlled substance whether he delivered cocaine or methamphetamine. In this case, however, there is *no factual dispute* that the laboratory results affected applicant's decision to plead guilty because the parties agree and the trial court found that these facts demonstrate that the discrepancy about the type of illicit material did affect the voluntariness of applicant's plea. The amount and strength of the evidence has been recognized as a proper basis for deciding to plead guilty, and those matters may

affect whether a plea was involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37–38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding that a defendant may choose to plead guilty due to the quality and quantity of the State's evidence against him even while believing himself innocent). In this case, applicant, the State, and the trial court apparently agree that, under the facts in this case, applicant would not have pleaded guilty to delivery of cocaine had he been made aware of the laboratory report that showed that the substance was instead methamphetamine. Because I would defer to what essentially amounts to stipulated facts that were found credible by the trial court that determined that applicant's plea was unknowing and involuntary in this case, I would consider the negative results for cocaine to be more than mere impeachment evidence under the circumstances of this particular applicant's case.

In contrast, applying the second rationale underlying the Supreme Court's decision in *Ruiz* to the instant case weighs in favor of denying relief to applicant. *Ruiz,* 536 U.S. at 630, 122 S.Ct. 2450. As discussed above, the Constitution does not require complete knowledge of the relevant circumstances, and this rationale would appear to favor denying relief. *Id.* After all, in this case, applicant was charged with delivery of cocaine and possession of methamphetamine, and he did in fact possess methamphetamine. There is a fair argument that his unawareness that the laboratory report did not reveal that he delivered cocaine was the type of lack

of complete knowledge of relevant circumstances that the Supreme Court relied on to deny relief in *Ruiz. See id.* I conclude that the second rationale underlying *Ruiz* would weigh in favor of denying relief to applicant.

Third, in assessing the due process considerations that may be affected in this case, which in particular examine the value of the additional safeguard and the adverse impact on the State, I conclude that those weigh in favor of granting relief to applicant. *See id.* at 631, 122 S.Ct. 2450. Here, there is a reasonable argument that the fact that applicant did not possess the illicit material that he was convicted of possessing is " 'information establishing the factual innocence of the defendant' regardless," which the Supreme Court noted would still have to be revealed to a defendant pre-plea. *Id.* The Supreme Court denied relief to Ruiz, in part, because the type of information at issue in that case was not of the variety that would raise a concern that "innocent individuals, accused of crimes, will plead guilty." *Id.* Here, in contrast, there is a reasonable concern that the type of evidence at issue here could cause an innocent individual to plead guilty. Applicant was charged with delivery of cocaine and possession of methamphetamine, and even though he was factually innocent of delivering cocaine, he pleaded guilty to that offense.[1]

Another due process concern considered by the Court in *Ruiz* weighed the "comparatively small [ ] constitutional benefit" of revealing mere impeachment evidence against the harm to the government. *Id.* at

---

1. In contrast, it may be that a different defendant under identical facts might reasonably decide to plead guilty to delivery of cocaine even though a laboratory report would later show that he did not have cocaine, because in exchange for that plea of guilty to that offense, he received a good plea deal for a low sentence for that offense and a dismissal of an

additional charge for possession of methamphetamine, a substance that a laboratory report would later show that he did actually possess. Thus, how a court assesses the importance of the type of substance on a defendant's decision to plead guilty likely impacts whether a defendant's plea was knowing and voluntary.

632, 122 S.Ct. 2450. In contrast, here, the State joins applicant's request that this Court grant relief to applicant because it determines that this would be in the State's interest. The State explains that it has "a vested interest in maintaining the integrity of its convictions and the accuracy of its crime reporting [and a]llowing convictions that are known to be wrongful, or at the very least inaccurate, to remain on the books does not further this interest." Unlike *Ruiz*, the State is apparently unconcerned that this type of relief would negatively affect its ability to secure plea bargains in other cases. And the State has no other concerns, as in *Ruiz*, that there are more compelling competing interests, such as the safety of informants or undercover officers that should be considered.

Taking all of the considerations underlying the Supreme Court's decision in *Ruiz*, I conclude that, in this case, habeas relief is appropriate. The laboratory report showing an absence of cocaine may rationally be considered as evidence of innocence of the offense for which applicant was convicted. The State agrees with applicant that he should obtain relief from his conviction on the basis that his plea was unknowing and involuntary under the facts of this case. The trial court agrees with applicant and the State that his plea was unknowing and involuntary. Having examined the rationale underlying the Supreme Court's decision in *Ruiz*, I am more persuaded that relief is appropriate in this case than I am that it should be denied.

## III. Conclusion

Given that the underlying rationale in *Ruiz* and *Mable* generally supports granting relief in this case, and given that the applicant, the State, and the habeas court jointly recommend that this Court grant

relief to applicant, I would grant relief to applicant. I, therefore, respectfully dissent.

Rehearing denied.

Newell, J., filed a concurring opinion.

Though I dissented to this Court's opinion on original submission, I agree with the Court's decision to deny Applicant's motion for rehearing. Applicant argues that the trial court also recommended granting relief upon a "no evidence" claim and that this Court failed to address that as a possible ground for relief. But at bottom, Applicant's claim in this regard merely rehashes an argument the Court necessarily considered and rejected: That proof that Applicant actually possessed meth rather than cocaine refuted an element of the offense of possession of cocaine.

Applicant is correct that this Court has previously wrestled with whether–in a possession of a controlled substance case–the identity of the item possessed is an element of the offense. *See Watson v. State*, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995) ("We hold that the Legislature intended to make possession of *each* individual substance within the same penalty group a separate and distinct offense."). But it now appears that the Court believes that the specific identity of the controlled substance is not a "crucial" fact necessary to prove up the offense of possession of a controlled substance. Instead, the State need only prove possession of a substance within a particular penalty group. So, to the extent *Watson* provided any authority for granting relief, the Court overruled it *sub silentio* on original submission in this case. This effectively resolved both claims for relief so reconsideration is not warranted.

Of course, by overruling *Watson*, we have raised a number of new issues. First, does this mean that a defendant who possesses multiple different controlled sub-

stances that fall within the same penalty group is only guilty of one offense? We reached the opposite conclusion in *Watson*, but as mentioned above, *Watson* is no longer good law. Second, does the State even need to plead the specific identity of the substance possessed, or can it simply allege the specific penalty group in the indictment and say that the defendant possessed a substance within that penalty group? And finally, does the State have to prove the defendant knew which penalty group the possessed substance belonged in? However, none of these issues are presented in this case, so they will have to wait for future litigation in the wake of the Court's holding.

In her dissent in *Ex parte Palmberg*, Judge Alcala opined that *Palmberg* implicitly overruled *Ex parte Mable*. *Ex parte Palmberg*, 491 S.W.3d 804, 819 (Tex. Crim. App. 2016) (Alcala, J., dissenting). If that was not true in *Palmberg*, it is certainly true now; with this case, she has been proven right. *Palmberg* has now swallowed both *Mable* and *Watson*. I disagree with this Court's holding in this regard, and that is why I dissented. Nevertheless, reconsideration at this point is unwarranted given that the Court has already considered and rejected Applicant's theory for relief.

With these thoughts I concur.